# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                          |     |                        |
|--------------------------|-----|------------------------|
| JEFFREY SCHLOSSER,       | :   |                        |
|    Plaintiff, | :   | No. 3:19-cv-1445 (SRU) |
|                          | :   |                        |
|    v.     | :   |                        |
|                          | :   |                        |
| SHANNON DROUGHN, et al., | :   |                        |
|    Defendants. | :   |                        |
|                          | :   |                        |

## INITIAL REVIEW ORDER

Jeffrey Schlosser ("Schlosser"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to his serious medical needs. On January 6, 2020, I entered an Initial Review Order dismissing all claims. ECF No. 13. I informed Schlosser that he could file an Amended Complaint reasserting his claims against ASN Jones if he could allege facts establishing a claim for supervisory liability against her and reasserting the claims relating to incidents on January 30, 2019, May 8 to May 14, 2019, and June 5, 2019 if he could allege facts establishing that his withdrawal symptoms posed a serious risk of medical harm and provided he could identify the nurses who denied him medication on those dates. *Id.* at 7.

Schlosser has filed an Amended Complaint, naming sixteen defendants in their individual capacities: Nurse Shannon Droughn, ASN medical supervisor Jones, Deputy Warden Jeanette Maldonado, Nurse Linda Carter, Nurse Chelsea, Medical Supervisor Cheatman, Medical Supervisor Jackson, two Nurses Jane Doe HCC, Officer Jane Doe HCC, Regional Supervisor

Kozak, Warden Allison Black, two Medical Supervisors HCC, Deputy Warden Walker, and Counselor Supervisor Tiriolo. He includes no request for relief and his Amended Complaint is not signed.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.    Allegations

On withdrawal from Gabapentin,[1] Schlosser experiences pain in his legs that required him to pace back and forth in his cell for relief. ECF No. 15 ¶ 1. When taken off Gabapentin,

---

[1] Schlosser incorrectly identifies the drug as Gaberpentin throughout the Amended Complaint.

Schlosser also experiences "the sweats" and feels "sick and achey." *Id.* He also feels agitated, confused, disoriented, and experiences delirium. *Id.* Schlosser alleges that he "could have also had withdrawal seizures which may only have responded to the readministration of Gab[a]pentin" but does not allege that he ever experienced them. *Id.*

On withdrawal from colonadine, Schlosser's blood pressure medication, he experiences "rebound hypertension." *Id.* ¶ 2. Schlosser alleges that high blood pressure makes him feel sick to his stomach so he cannot eat, causes severe headaches, and makes him feel "cold and clammy." *Id.* He states that colonadine withdrawals cause "alpha vasoconstriction." *Id.* Schlosser has been taking colonadine since 2012. *Id.*

On withdrawal from venlafaxin, Schlosser experiences dysphoria, headaches, nausea, irritability, emotional lability, and the sensation of electric shocks or "brain zaps." *Id.* ¶ 3. He is unable to sleep. *Id.* Schlosser claims that those symptoms are the result of "an overly rapid reduction of neurotransmitter levels." *Id.* Schlosser takes venlafaxin to treat his severe anxiety, agoraphobia and social phobias, and to keep him relaxed as treatment for his severe PTSD. *Id.* Schlosser claims that Venlafaxin and Gabapentin work better together than separately. *Id.* Schlosser also takes Benadryl to sleep. *Id.* ¶ 4.

Schlosser alleges that the medication doses last only 8 to 10 hours, so he starts to experience withdrawal symptoms when he misses even one dose of his medication. *Id.* ¶ 5. When he does not get a complete dose of medication, it takes about two days for Schlosser to feel "normal" again and eat properly. *Id.*

On December 1, Schlosser asked Nurse Droughn to have a lieutenant present when he took his medication. *Id.* ¶¶ 6, 7. His request was prompted by an incident on November 26,

2018, when Schlosser reported Nurse Droughn to a lieutenant for harassment and she became angry. *Id.* ¶ 7. Nurse Droughn refused the request, said Schlosser had refused his medication, and told Schlosser to leave or she would issue him a disciplinary ticket. *Id.* Schlosser left without his medication. *Id*. ¶ 8.

Schlosser wrote to defendant Maldonado about the incidents on November 26 and December 1. *Id.* On January 29, 2019 Schlosser submitted an informal resolution to the medical unit concerning the denial of medication because Nurse Carter did not give him his medication. *Id.* Schlosser alleges that he saw defendant Jackson on February 5, 2019 about dry skin. Although Schlosser does not allege that he spoke with her about his medication, he alleges, however, that "they are aware of the issue." *Id.*

Schlosser also wrote to the Deputy Warden on January 29, 2019. *Id.* ¶ 9. The informal resolution request was forwarded to ASN Jones who provided Schlosser his blood pressure medication and indicated that he was a "no show" for medication that day. *Id.* On February 1, 2019, Deputy Warden Maldonado confirmed that Schlosser did not receive his colonadine on January 15 and January 29 and stated that it was Schlosser's responsibility to show up at med pass. *Id.* ¶ 10.

On January 30, 2019, Schlosser filed a grievance about his medication and the dangers of rebound hypertension and stroke from high blood pressure. *Id.* ¶ 11. He also complained that he was not receiving the same dosage of Gabapentin that he was receiving in the community. *Id.* The grievance was dated as received on March 5, 2019 and disposed of on March 18, 2019. *Id.* ¶ 12.

On February 7, 2019, at 10:00 p.m., Nurse Chelsea had only half of Schlosser's dose of

Gabapentin. *Id.* ¶ 13. When Schlosser made her aware of the problem, Nurse Chelsea took the medication and said she would return. *Id.* She did not. *Id.* Schlosser filed a grievance. *Id.*

Beginning on May 8, 2019, Schlosser received only one dose of Gabapentin over the next six days. *Id.* ¶ 14. He experienced severe withdrawal. *Id.* When he filed a grievance, the response falsely stated that the medication had been given. *Id.*

On May 28, 2019, Nurse Droughn came to Schlosser's cell to give him his medication. *Id.* ¶ 15. She crushed the medication and harassed Schlosser stating that he had medication in his mouth when he did not. *Id.* When Schlosser tried to close the cell door to avoid interacting with her, Nurse Droughn locked the door open and walked away. *Id.* Schlosser then called her a name and filed a grievance. *Id.*

On June 1 and 2, 2019, Nurse Droughn did not stop at Schlosser's cell during morning medication distribution. *Id.* ¶ 16. She did not tell Schlosser that he would be called to the medical unit. *Id.* After the shift changed, an officer called the medical unit for Schlosser. *Id.* Schlosser filed a grievance on June 18, 2019. *Id.* The response stated that Nurse Droughn had twice asked Schlosser to take his medication. *Id.* The same incident happened on June 5, 2019. *Id.* Schlosser filed another grievance. *Id.*

On June 5, 2019, Schlosser was transferred from New Haven Correctional Center to Hartford Correctional Center. *Id.* ¶ 17. He was not given Gabapentin or venlafaxine for three or four days and experienced severe withdrawal symptoms. *Id.* Schlosser believes that he was without his medication because the medication was not sent with him from New Haven Correctional Center. *Id.* On June 19, 2019, Schlosser received a response to his grievance stating that his medication was not available. *Id.*

On June 30, 2019, Nurse Jane Doe walked by Schlosser's cell during evening medication distribution. *Id*. ¶ 18. When Schlosser asked for his medication, Nurse Doe asked for his name and said she would return. *Id*. At 12:00 a.m., Schlosser told block officer Jane Doe about his medication. Id. She contacted the medical unit and was told it was too late to issue medication. *Id.* Schlosser filed a grievance. *Id.*

On September 2, 2019, Schlosser did not receive his evening dose of Gabapentin. *Id.* ¶ 19. He filed a grievance against Nurse Doe. *Id.*

On October 27, 2019, Nurse Droughn denied Schlosser his morning dose of Gabapentin but noted in the computer that she had. *Id*. ¶ 20. Medical Supervisor Cheatman responded to the grievance stating that all his medication had been administered. *Id.* Schlosser did not receive his Gabapentin on October 30, 2019. *Id.* ¶ 21. He filed a grievance against Supervisors Cheatman and Jackson, which Supervisor Cheatman improperly investigated. *Id.*

From December 13 through December 24, 2019, Nurse Droughn stopped using the proper tool to crush Schlosser's medication, instead using the bar code scanner. *Id.* ¶ 22. Schlosser submitted informal requests to the supervisors, warden, and commissioner "every day she did this." *Id.*

During the first two weeks of January 2020, Deputy Warden Maldonado, Deputy Warden Walker, and Counselor Supervisor Tiriolo met with Schlosser about other issues. *Id.* ¶ 24. He told them about his medication issues and Nurse Droughn's past practice of using unsanitary methods to crush his medication. *Id.* He also stated that his Gabapentin is extended release and should not be crushed. *Id.*

II.     <u>Analysis</u>

Schlosser identifies no claims in his Amended Complaint.  Thus, I assume that he asserts the same deliberate indifference to medical needs claim he brought in the Original Complaint, alleging that the defendants were deliberately indifferent to his serious medical need by failing to provide all his medication as prescribed.

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  To state a claim for deliberate indifference to serious medical needs, Schlosser must allege facts showing both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)).

Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death, degeneration, or extreme pain."  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  Subjectively, the defendants must have been actually aware of a substantial risk that Schlosser would suffer serious harm as a result of their conduct.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).  Negligence, however, does not rise to the level of deliberate indifference and is not cognizable under section 1983.  *See id.* at 280.  Nor does a

disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Courts have held that denial of a single dose, or even several doses, of a needed medication is insufficient to support a deliberate indifference claim. *See Smith v. Carpenter*, 316 F.3d 178, 188–89 (2d Cir. 2003) (finding no constitutional violation because of two alleged instances of missed HIV medication where the plaintiff failed to present evidence of permanent or on-going harm or an unreasonable risk of future harm stemming from missed doses); *Youngblood v. Artus*, 2011 WL 6337774, at *7 (N.D.N.Y. Dec. 19, 2011) (granting motion to dismiss deliberate indifference claim where the defendant "failed to give [the plaintiff] a single dose of his seizure medication" and the plaintiff did not specify any resulting harm); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (dismissing deliberate indifference claim based on "a delay of several days in dispensing plaintiff's hypertension medication" absent evidence "the delay gave rise to a significant risk of serious harm"); *Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (granting summary judgment for defendant on claim that medication was not timely distributed because "the alleged injury to the plaintiff resulting from not getting his medicine 'on time' does not rise to a 'sufficiently serious' level").

I dismissed Schlosser's claims for denial of one dose of medication on December 1, 2018, February 7, 2019, and June 30, 2019 because he did not allege that he suffered any harm from the denial of one dose of medication. Schlosser reasserts variations of those claims. In the Amended Complaint, Schlosser alleges that he was denied one dose of all three medications on December 2, 2018 and June 30, 2019. He alleges that he was denied one dose of Gabapentin on

February 7, 2019, September 2, 2019, October 27, 2019, and October 30, 2019, and one dose of colonadine on January 15, 2019, and January 30, 2019.

Schlosser describes the symptoms he suffers when he misses a dose of medication and indicates that, when he fails to receive a dose of all medications, he recovers completely in about two days. I informed Schlosser that he could reassert those claims in an Amended Complaint if he could show that his withdrawal symptoms pose a serious risk of medical harm. Because Schlosser does not allege that he suffers any permanent or on-going serious harm from one missed dose, the claims for one missed dose of medication are dismissed.

Schlosser includes two instances when medication was denied for longer periods of time. Schlosser alleges that from May 8, 2019 through May 14, 2019 he received only one dose of medication instead of the usual morning and evening doses, causing serious withdrawal symptoms. Because that incident covered six days, I permit the claim to proceed. However, I also instructed Schlosser to identify the defendants responsible for the missed medication. Schlosser identifies no defendant in connection with that claim. He does include two medical supervisors from New Haven Correctional Center, Cheatman and Jackson, as defendants. I permit that claim to proceed against the medical supervisors. If, during discovery, Schlosser can identify the nurses who failed to administer his medication on each day, he may move to add the nurses as defendants.

The second incident, beginning on June 5, 2019 and lasting three or four days, occurred after Schlosser was transferred to a different correctional facility. That action concerns Schlosser's medical treatment at New Haven Correctional Center and the defendants he has identified are alleged to work there. Federal Rule of Civil Procedure 20 permits joinder of

multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted).  The Second Circuit has observed in the Rule 13 context,[2] that whether a counterclaim arises out of the same transaction as the original claim depends on the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

This case concerns only events and persons at New Haven Correctional Center. Schlosser was not granted leave to add claims from other correctional facilities.  Whether his medications were available at Hartford Correctional Center involves different facts and persons. The underlying law governing a claim that a nurse deliberately failed to provide available medication is different than a claim that needed medication was not available in a particular correctional facility.  Because there are no questions of law or fact common to all claims, the newly added claims and defendants are improperly joined in this case in violation of Rule 20.[3]

---

[2] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims."  *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

[3] I note that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner complaints pursuant to 28 U.S.C. § 1915A.  As two commentators have noted:

*See Wilson v. McKenna*, 2015 WL 1471908, at *6 (D. Conn. Mar. 31, 2015) (advising plaintiff that improperly joined claims must be pursued in separate actions). The claims against the Doe defendants from Hartford Correctional Center are dismissed without prejudice. Schlosser may pursue those claims in a separate action.

Schlosser alleges that medical staff at New Haven Correctional Center should have sent his medication with him. He cites no procedures mandating that conduct and, even if there were such a procedure, Schlosser's allegations sound in negligence, which is not cognizable under section 1983. Thus, any claim for failure to send medication with him upon transfer is dismissed without prejudice.

I dismissed Schlosser's claim that, on one occasion, a nurse crushed all his medications and he gagged when taking the crushed Benadryl. He omits that claim from the Amended Complaint but replaces it with two claims against Nurse Droughn. Schlosser alleges that, on May 28, 2019, she crushed his medication and then accused him of having medication in his mouth when he did not. Schlosser does not allege that anything happened as a result of that incident. Because Schlosser has no constitutional right to be free from a false accusation, that claim is dismissed. *See Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). The second claim is that, from December 13, 2019 until December 24, 2019, Nurse Droughn crushed his medication with the bar code scanner

---

In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

John Boston & Daniel E. Manville, *Prisoners' Self-Help Litigation Manual* 348 (4th ed. 2010) (collecting cases).

instead of the proper crushing tool. Because Schlosser alleges no harm suffered from these actions, he fails to state a cognizable claim against Nurse Droughn based on those actions.

I dismissed the claims against Deputy Warden Maldonado and ASN Jones in the Original Complaint because Schlosser failed to allege facts demonstrating their personal involvement in his claims. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). I informed Schlosser that, to state a cognizable claim for supervisor liability, he must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Schlosser now alleges that he wrote to Deputy Warden Maldonado twice about the missing medication doses, sent an informal resolution request to ASN Jones, and recently spoke to Deputy Wardens Maldonado and Walker and Counselor Supervisor Tiriolo about his medication issues. Although only one incident described in the Amended Complaint rises to the level of a potential constitutional violation, the notification about repeated failure to administer proper medication doses is sufficient at this time to permit a claim for supervisory liability to proceed against defendants Jones, Maldonado, Walker, and Tiriolo.

## CONCLUSION

The case will proceed on the claim for denial of medication during the period May 8

through May 14, 2019 against defendants Jackson and Cheatman, and the claim for supervisory liability against defendants Jones, Maldonado, Walker, and Tiriolo. All other claims and defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

I enter the following additional orders:

(1) **The Clerk shall** verify the current work addresses for defendants Medical Supervisor Cheatman, Medical Supervisor Jackson, Deputy Warden Walker, Deputy Warden Maldonado, Counselor Supervisor Tiriolo, and ASN Jones with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Amended Complaint and this Order to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General's office and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff advised that the Program may be used only to file documents with the court. Because local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendant's counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to plaintiff.

So ordered.

Dated at Bridgeport, Connecticut, this 2nd day of March 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge