# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JEFFREY SCHLOSSER, | : | |
| Plaintiff, | : | No. 3:19-cv-1445 (SRU) |
|  | : | |
| v. | : | |
|  | : | |
| SHANNON DROUGHN, et al., | : | |
| Defendants. | : | |
|  | : | |

## RULING ON MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Jeffrey Schlosser ("Schlosser"), proceeding *pro se*, filed the original complaint in this action in September 2019, bringing claims against numerous officials associated with the Connecticut Department of Correction ("DOC"). *See* Compl., Doc. No. 1. Schlosser generally alleged that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he was incarcerated at New Haven Correctional Center ("NHCC") in 2019. *Id.* Schlosser subsequently amended his complaint in January 2020. *See* Am. Compl., Doc. No. 15. In my Initial Review Order regarding the Amended Complaint, I permitted Schlosser's Eighth Amendment claims against defendants Jackson, Cheatman, Jones, Maldonado, Walker, and Tiriolo, relating to a denial of access to medication between May 8 and May 14 of 2019, to proceed. *See* Initial Review Order re Amended Complaint, Doc. No. 17, at 12-15. I dismissed all other claims and defendants from the action. *See id.*

Schlosser now seeks leave to file a second Amended Complaint ("Proposed Amended Complaint"). In addition to the six defendants listed above, Schlosser brings claims against: RN Droughn, RN Chelsea Nappi, APRN Karen McGowan-Cottle, BSN RN L. Richardson, LPN

Soler, RN Goode, Deputy Commissioner Angel Quiros, Deputy Commissioner Cheryl Cepelak, Governor Ned Lamont, Lieutenant Governor Susan Bysiewicz, and Captain Domitriz. Schlosser alleges that the defendants violated various provisions of state and federal law, including 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, 1997d, 10841, 12101 *et seq*., 2000d-2, 2000d-7; 18 U.S.C. §§ 241, 242, 245, 1001, 1341; white collar crimes; 29 U.S.C. § 794; 45 C.F.R. Part 85 *et seq*.; 28 C.F.R. Part 35 *et seq*.; and additionally brings state law claims for intentional infliction of emotional distress.

## I.    <u>Standard of Review</u>

Although Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given, a district court has discretion to deny a motion to amend on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) ("[a] district court has broad discretion in determining whether to grant leave to amend"). A court may also deny leave to amend if the proposed amendment fails to state a cognizable claim and the amendment would therefore be futile. *See, e.g., Anderson News L.L.C. v, American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted.") (cleaned up).

Under section 1915A of Title 28 of the United States Code, a district court must review an incarcerated individual's complaint—or amended complaint—to determine whether it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from that relief. 28 U.S.C. § 1915A. Because it would be futile to grant leave to amend if Schlosser's Proposed Amended Complaint does not meet that standard, I will conduct a review of the complaint to determine whether it includes cognizable claims not stated in the Amended Complaint.

Although detailed allegations are not required in order to survive initial review, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, it is well-established that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.   **Allegations**[1]

On withdrawal from Gabapentin, Schlosser suffers from a variety of symptoms, including: pain in his legs that requires him to pace back and forth in his cell for relief; "the sweats"; feels "sick and achey"; and feels agitated, confused and disoriented. Proposed Amended Complaint ("PAC") at ¶ 4. According to Schlosser, discontinuation of Gabapentin could also

---

[1] Although Schlosser refers to various pages of his medical records throughout his statement of facts, he does not attach copies to his Proposed Amended Complaint.

3

potentially cause him to experience seizures. *Id.*

On withdrawal from Colonadine, a blood pressure medication that Schlosser has been taking since 2012, Schlosser experiences "rebound hypertension" and feels sick to his stomach, has severe headaches and feels cold and clammy. *Id.* at ¶ 4(A). Discontinuation of Colonadine can also cause vasoconstriction. *Id.*

On withdrawal from Venlafaxin, which Schlosser takes to treat severe anxiety, agoraphobia, social phobias and PTSD, he experiences dysphoria, headaches, nausea, irritability, emotional lability, the sensation of electric shocks or "brain zaps" and is unable to sleep. *Id.* at ¶ 4(B). Those symptoms are the result of "an overly rapid reduction of neurotransmitter levels." *Id.* According to Schlosser, Venlafaxin and Gabapentin are more effective when taken together. *Id.*

Schlosser also takes Benadryl to sleep. *Id.* at ¶ 4(C). Benadryl doses, however, last only 8-10 hours, so he starts to experience withdrawal symptoms when he misses even one dose. *Id.* When he does not get a complete dose of medication, it takes about two days for Schlosser to feel "normal" again and to be able to eat normally. *Id.*

On November 26, 2018, Nurse Droughn came to Schlosser's door to give him medication in powder form. *Id.* at ¶¶ 4(D), 4(E). She directed Schlosser to do a "finger sweep" in his mouth after dispensing the medication; when Schlosser refused, she began harassing him, using profanities. *Id.* at ¶ 4(E). Schlosser complained to Lieutenant Pedro that Nurse Droughn was harassing him even though he was not hoarding medication. *Id.* Nurse Droughn also falsely recorded in Schlosser's medical records that he was trying to hoard Benadryl and Gabapentin. *Id.* at ¶ 4(F).

At some point, Nurse Droughn sought approval from Nurse McGowan-Cottle to replace Schlosser's Gabapentin with acetaminophen. *Id.* at ¶ 4(G). Schlosser cannot take NSAIDs because he suffers from thrombocytopenia,[2] a blood condition that causes him to bleed easily. *Id.*

Relying on information from Nurse Droughn, Nurse McGowan-Cottle refused to increase Schlosser's dosage of Gabapentin. *Id.* at ¶ 4(H). She also incorrectly recorded the dose of Gabapentin that Schlosser had taken prior to incarceration as 800 milligrams, when Schlosser had actually been taking 900 milligrams. *Id.* During the entire period that Schlosser was held at NHCC, Schlosser received the wrong dose of Gabapentin. *Id.* at ¶ (JJ).

On December 1, Schlosser asked Nurse Droughn to have a lieutenant present when he took his medication. *Id.* at ¶ 4(K). Nurse Droughn refused the request and told Schlosser to leave the medical unit without giving him his prescribed medication. *Id.* Although Schlosser did not receive his medication that night, Nurse Droughn falsely recorded that his medication had been dispensed. *Id.* Schlosser wrote to Maldonado about the incidents on November 26 and December 1 but received no reply. *Id.* at ¶ 4(J).

Schlosser did not receive his morning medication on January 15, 2019. *Id.* at ¶ 4(L). Two weeks later, on January 29, 2019, he again did not receive medication, this time from Nurse Carter. *Id.* at ¶ 4(M). Schlosser contends that Nurse Carter should have sought him out to give him his medication. *Id.* at ¶ 4(R). Schlosser filed an inmate request and grievance regarding the incident on January 29; in response, ASN Jones and Deputy Warden Maldonado stated that it was Schlosser's responsibility to show up at "med pass" to receive his medication. *Id.* at ¶ 4(N).

---

[2] Schlosser incorrectly identifies this condition as thombopcynipedia.

5

They did, however, confirm that Schlosser had not received his dose of Colonadine on January 15 and 29. *Id.* Schlosser filed a grievance on January 30 regarding his missing medication, and received a response informing him that he had exhausted available administrative remedies. *Id.* at ¶ 4(T).

On February 7, 2019, at 10:00 p.m., Nurse Nappi arrived with only half of Schlosser's prescribed dose of Gabapentin. *Id.* at ¶ 4(O). She told Schlosser that she would return with the full dose of medication, but never came back. *Id.* Although Schlosser did not receive any Gabapentin that night, Nurse Nappi noted in his medical records that he had been provided with a full dose. *Id.* Schlosser filed a grievance with respect to the missing Gabapentin but received no response. *Id.* at ¶ 4(W).

Schlosser's Gabapentin prescription ran out on May 7, 2019. *Id.* at ¶ 4(P). Between May 8, 2019 and May 14, 2019, Schlosser experienced severe withdrawal symptoms as a result of missing his medication. *Id.* Although he was finally provided Gabapentin on May 14, 2019, he did not receive his Colonadine prescription that day. *Id.* Schlosser requested a prescription renewal, but that request was not received or acted upon by RN L. Richardson until four days later. *Id.* at ¶ 4(V). Schlosser filed a grievance regarding the missed medication between May 8 and May 14. *Id.* at ¶ 4(Q). His grievance was denied with a notation that he had received his medication as prescribed during that time; the grievance form was signed by RN Goode and LPN Soler. *Id.* at ¶ 4(U).

On May 28, 2019, Nurse Droughn came to Schlosser's cell to give him his medication. *Id.* at ¶ 4(X). She crushed his medication and began harassing Schlosser, accusing him of having medication in his mouth when he did not. *Id.* Schlosser tried to close the door to avoid

6

interacting with her, but she forced the door open and locked it so that it would remain open. *Id.*
Schlosser called her a name and filed a grievance against her but received no response. *Id.*

On June 5, 2019, Nurse Soler prepared Schlosser's medications for his transfer to
Hartford Correctional Center. *Id.* at ¶ 4(CC). Nurse Soler included only Schlosser's evening
doses of medication, leaving Schlosser without medication for two or three days. *Id.*

Schlosser did not receive Gabapentin in the evenings on October 16, 2019 and October
24, 2019. *Id.* at ¶ 4(Z). He filed a grievance but did not receive a response. *Id.* Schlosser also did
not receive his medication on the morning of October 17, 2019. *Id.* at ¶ 4(AA). He filed another
grievance, and received a response indicating that his medication had been administered and that
he had exhausted administrative remedies with respect to that claim. *Id.* On October 19, 2019,
Schlosser did not receive Colonadine, Gabapentin or Venlafaxine; on October 30 and 31, he did
not receive his prescribed dose of Gabapentin. *Id.* at ¶ 4(Y). In response to a grievance Schlosser
filed, Cheatman indicated that no medication was in the building at that time. *Id.* He also
confirmed that Schlosser had exhausted available administrative remedies. *Id.*

From December 14, 2019 through January 15, 2020, Nurse Droughn stopped using the
proper tool to crush Schlosser's medication, and instead used the bar code scanner. *Id.* at ¶
4(BB). Although Schlosser informed the medical supervisors and deputy wardens that Nurse
Droughn was improperly using the bar code scanner, none of the supervisors or wardens
intervened to stop her from crushing the medication with the wrong tool. *Id.* Schlosser did not
receive Gabapentin or Venlafaxin on the morning of December 19, 2019, nor did he receive
Gabapentin on the morning of December 30, 2019. *Id.* at ¶ 4(DD).

Frustrated with the repeated issues he was experiencing regarding his medication and the

lack of help from medical staff in remedying the problem, Schlosser began submitting inmate requests complaining that block officers were using cellphones inside the correctional facility. *Id.* at ¶ 4(EE). At some point in the first two weeks of January 2020, Schlosser met with Deputy Warden Maldonado, Deputy Warden Walker, and Counselor Supervisor Tiriolo about his medication issues. *Id.* at ¶ 4(FF). Schlosser explained that the medical department had failed to ensure that he received his medication as prescribed. *Id.* at ¶ 4(GG)-4(II).

During the time he was incarcerated at Cheshire Correctional Institution ("Cheshire"), Schlosser received a few disciplinary reports and was sanctioned with loss of mail. *Id.* ¶ 4(NN). Schlosser claims that he should not have been put on loss of mail for more than sixty days. *Id.* During the time period that he was denied access to mail, Schlosser also ordered two legal books. *Id.* Although the books were not social correspondence, Domitriz refused to release the books to Schlosser. *Id.*

In early October 2020, Schlosser spoke with Assistant Attorney General Robert Dearington regarding certain items that he had requested during discovery but had not received. *Id.* ¶ 4(OO). AAG Dearington said that he had not received the discovery requests. *Id.* Schlosser does not know if the mailroom sent the letters to AAG Dearington. *Id.*

Schlosser has been diagnosed with dissociative PTSD, amnesia, and traumatic brain injury. *Id.* ¶ 4(RR). The lack of access to his prescribed doses of medication has exacerbated his symptoms and he is concerned that the stress has negatively affected his blood platelet levels. *Id.*

## III.   <u>Discussion</u>

Schlosser includes the following claims in his Proposed Amended Complaint: (1) Nurse Droughn harassed and intimidated Schlosser in violation of 18 U.S.C. §§ 241, 242, 245, 1341

and 42 U.S.C. § 12101 *et seq*.; (2) that repeated harassment gives rise to a claim for intentional infliction of emotional distress against Nurse Droughn; (2) staff at NHCC discriminated against Schlosser and denied him access to the pharmacy in violation of 42 U.S.C. § 12101 *et seq*., 29 U.S.C. § 794, and 45 C.F.R. Part 85; (3) Nurse Droughn violated 18 U.S.C. § 1001 by falsely recording in his medical records that she gave Schlosser his medication and by issuing a disciplinary report and falsely recording in his medical records that Schlosser was hoarding medication; (4) defendants Maldonado, Walker, Tiriolo, Jones, Droughn, Nappi, Cheatman, Jackson, McGowan-Cottle, and Soler violated 42 U.S.C. § 10841 by failing to provide appropriate medical treatment to inmates at NHCC; (5) the defendants committed white collar crimes; (6) defendants Walker, Tiriolo, and Maldonado violated 18 U.S.C. § 241, 242, 245 when they tried to intimidate Schlosser; (7) defendants McGowan-Cottle, Jackson, and Jones violated 18 U.S.C. §§ 241, 242, 245 by permitting Nurse Droughn to intimidate Schlosser, by failing to increase his dosage of Gabapentin, and by giving him acetaminophen instead of Gabapentin; (8) Nurse Nappi falsely noted that she dispensed Gabapentin in violation of 18 U.S.C. §§ 1001, 1341; (9) Nurses Soler and Goode violated 18 U.S.C. § 1001 by falsely stating that medication was given on dates it was not; (10) defendants McGowan-Cottle, Jackson, and Jones violated Schlosser's rights by failing to renew his prescription on time; (11) defendants McGowan-Cottle, Jackson, Jones, and Cheatman violated Schlosser's rights by failing to remedy the issues with his medication; (12) Nurse Soler violated 18 U.S.C. §§ 1001, 1341 by including only one dose of Schlosser's medication when he was transferred to another facility but noting that all doses were included; and (15) defendants Tiriolo, Walker, Maldonado, Cheatman, and Jackson violated 18 U.S.C. §§ 241, 242, 245 by failing to perform a proper investigation and discipline medical staff.

I will address those claims in turn.

1.      Federal Rule of Civil Procedure 20

In the Proposed Amended Complaint, Schlosser alleges that Captain Domitriz violated his rights under the First Amendment by refusing to provide Schlosser access to certain legal books that Schlosser ordered after his transfer to Cheshire. Under Federal Rule of Civil Procedure 20, joinder of multiple defendants in one action is proper only if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Courts considering whether to sever a particular claim consider a variety of factors, including "whether: (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012).

In my Initial Review Order of Schlosser's Amended Complaint in the case at bar, I clarified that this action concerns only events and persons at NHCC. Because the claim against Captain Domitriz occurred at a different correctional facility and concerns denial of access to mail rather than medication, the claim is not reasonably related to the claims regarding denial of access to medication at NHCC and is not properly joined in this action. Accordingly, the claim is

10

severed and dismissed without prejudice. To the extent that Schlosser seeks to bring claims against Captain Domitriz regarding denial of access to legal books or mail, he must do so in a separate action.

      2.    <u>Supervisory Liability</u>

In the Proposed Amended Complaint, Schlosser seeks to add Deputy Commissioners Quiros and Cepelak, Governor Lamont, and Lieutenant Governor Bysiewicz as defendants. He does not mention them in his statement of facts, but instead alleges in his description of the parties that those defendants are generally responsible for the health and welfare of Connecticut inmates.

In *Tangreti v. Bachmann*, reviewing an Eighth Amendment claim for money damages raised against various DOC officials, the Second Circuit reexamined the requirements for holding a supervisory official liable under section 1983. 983 F.3d 609 (2020). Considering the impact of the watershed opinion in *Ashcroft v. Iqbal,* (2009) the *Tangreti* concluded that a plaintiff may not rely on any "special rule" for imposing liability against supervisory defendants for constitutional violations. *Id.* at 612. "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

Here, Schlosser includes no facts in the complaint to suggest that Deputy Commissioners Quiros and Cepelak, Governor Lamont, and Lieutenant Governor Bysiewicz were personally involved in or aware of the incidents described in the complaint or that he informed them of the incidents afterward. Because Schlosser has therefore failed to demonstrate that those defendants "personally knew of and disregarded an excessive risk to [his] health or safety", he has not set

11

forth a cognizable claim against them under section 1983. *Id.* at 619.[3] Accordingly, to the extent

that Schlosser seeks to bring claims against Deputy Commissioners Quiros and Cepelak,

Governor Lamont, and Lieutenant Governor Bysiewicz, those claims are dismissed. *See*

1915A(b)(1).

   3.   42 U.S.C. §§ 1981, 1985, 1986, 1988

In addition to 42 U.S.C. § 1983, Schlosser brings claims under 42 U.S.C. §§ 1981, 1985,

1986, and 1988. I address those claims in turn.

Section 1981 provides, in relevant part:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every
> State and Territory to make and enforce contracts, to sue, be parties, give evidence, and
> to the full and equal benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens…

42 U.S.C. § 1981. To state a cognizable claim under section 1981, Schlosser must allege "facts

in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an

intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned

one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and

be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085,

1087 (2d Cir. 1993) (per curiam). Schlosser includes no facts in the Proposed Amended

Complaint to suggest that he was discriminated against by the defendants on the basis of race, or

---

[3] I note that Schlosser filed his motion to amend before *Tangreti* was decided. But even considered under the
standards articulated in *Colon v. Coughlin* for demonstrating personal involvement by a supervisor, Schlosser's
claim fails: he includes no facts from which I can conclude that the defendants were even aware of the alleged
constitutional violations. 58 F.3d 865, 873 (2d Cir. 1995). *See, e.g., Grullon v. City of New Haven,* 720 F.3d 133,
139 (2d Cir. 2013) (affirming dismissal of claims under *Colon* where plaintiff set forth no allegations "sufficient to
permit an inference the [defendant] had acted or failed to act in any of the ways that would subject him to personal
liability").

that his ability to participate in one or more of the activities enumerated in section 1981 was impacted by the denial of access to medication. Accordingly, the claim under section 1981 is dismissed.

Section 1985 (3)[4] provides:

> [i]f two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (3). Although section 1985 protects a broad swathe of individual civil rights, a fundamental requirement of a cognizable claim under the statute is the existence of a conspiracy. "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (cleaned up) (citation omitted). Although Schlosser alleges in the Proposed Amended Complaint that the defendants violated his constitutional rights and additionally violated various provisions of federal law, he includes no facts to suggest that the defendants engaged in any sort of conspiracy or otherwise acted in concert. Because Schlosser has therefore failed to plausibly allege a violation of section 1985, those claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Although Schlosser additionally appears to raise a claim under Section 1986, that statute provides no substantive rights but instead provides "a remedy against individuals who share responsibility for conspiratorial wrongs under § 1985." *Adickes v. S.H. Kress & Co.*, 398 U.S.

---

[4] I assume that Schlosser intends to raise a claim under subsection 3, because the other subsections do not appear to be relevant to this action.

144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part.) Because Schlosser has failed to state a viable claim under section 1985, his claim under section 1986 must also be dismissed. *See, e.g., Mian,* 7 F.3d at 1087 ("a § 1986 claim must be predicated upon a valid § 1985 claim").

With respect to Schlosser's claims under section 1988, subsection (a) provides only that district courts shall exercise their jurisdiction over civil rights cases in conformity with federal law or state law and does not provide an independent cause of action. *Moor v. Alameda Cty.*, 411 U.S. 693, 702-06 (1973). Subsection (b) and (c) address a district court's authority to award attorneys' fees and expert fees in actions brought under section 1988. 42 U.S.C. § 1988(b)-(c). Because Schlosser is proceeding *pro se* and is therefore not entitled to attorneys' fees, those sections are inapplicable here. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (a "*pro se* litigant who is not a lawyer is not entitled to attorney's fees") (cleaned up); *see also Sosa v. Lantz*, 660 F. Supp. 2d 283, 289 (D. Conn. 2009). Accordingly, any claims raised under section 1988 are dismissed.

      4.    <u>Americans with Disabilities Act and Rehabilitation Act</u>

In his jurisdictional statement, Schlosser references the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Although the ADA and RA apply to different entities—Title II of the ADA applies to all public entities, while the RA applies only to entities receiving federal assistance—the elements of a cognizable claim under both statutes are identical. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 n.13 (D. Conn. 2008). Accordingly, I will consider claims raised under those statutes together. *See, e.g., Rodriguez by Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d

14

Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical

requirements, we consider these claims in tandem.").

     Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefit of the

services, programs, or activities of a public entity, or be subjected to discrimination by such

entity." 42 U.S.C. § 12132. Although the ADA prohibits *discrimination* on the basis of disability,

it "do[es] not guarantee any particular level of medical care for disabled persons, nor assure

maintenance of services previously provided." *CERCPAC v. Health & Hosp. Corp.*, 147 F.3d

165, 168 (2d Cir. 1988). The underlying purpose of the statute is instead to "ensure evenhanded

treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir.

1998). Accordingly, to state a viable claim for violations of Title II of the ADA, a plaintiff must

allege that he or she was denied the opportunity to participate in or benefit from an institutional

program, service, or activity, or otherwise discriminated against on the basis of disability.

     Here, although Schlosser sets forth detailed allegations to support his claim that he

suffers from a variety of serious underlying medical conditions—including PTSD, amnesia, and

traumatic brain injury—he includes no facts to suggest that he was denied access to a program,

service, or activity or otherwise discriminated against on the basis of those conditions. The crux

of his claim is instead that he was denied adequate treatment because he was not afforded access

to his prescription medications. Because Schlosser sets forth no facts from which I can infer that

he suffered discrimination on the basis of his illness, he has failed to state a cognizable claim

under the ADA or RA, and those claims are dismissed. *See, e.g., Petitt v. Badura,* 2020 U.S.

Dist. LEXIS 185896, at *7 (D. Conn. Oct. 7, 2020) (dismissing ADA claim where petitioner

failed to demonstrate that the defendants "acted as he alleges they did *because* of [his] disability") (emphasis in original); *see also Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability.").

     5.    <u>Other Federal Statutes and Regulations</u>

Schlosser additionally alleges that the defendants violated provisions of the following statutes and regulations: 18 U.S.C. §§ 241, 242, 245, 1001, and 1341; White Collar Crimes; 42 U.S.C. §§ 1997d and 10841; 45 C.F.R. Part 85 *et seq.*; and 28 C.F.R. Part 35 *et seq.* I address those claims in turn.

With respect to Schlosser's claims under Title 18, those statutes are federal criminal statutes that do not afford a private right of action. *See, e.g., Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir. 2009) ("To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action."); *Murat Ates v. United States*, 2020 U.S. Dist. LEXIS 196726, at *10-11 (E.D.N.Y. Oct. 22, 2020) ("Plaintiff asserts claims pursuant to 18 U.S.C. §§ 241, 245, and 249. However, these are criminal statutes and do not provide a private right of action.") (cleaned up) (collecting cases); *Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 308 (E.D.N.Y. 2019) (no private cause of action under section 1001) (collecting cases); *Pappas v. Arfaras*, 1991 U.S. Dist. LEXIS 14840, at *4 (D. Conn. Aug. 27, 1991) (no private cause of action under section 1341). Further, to the extent that Schlosser seeks to bring

claims for violations of white collar crimes, that general reference is not sufficiently specific to state a cognizable claim.

Schlosser additionally cites to 42 U.S.C. § 10841, which sets forth rights that must be afforded to mental health patients. That section, however, creates no individual federal rights that can be enforced in a section 1983 action. *See Mele v. Hill Health Ctr.*, 609 F. Supp. 2d 248, 255 (D. Conn. 2009) (statute neither affords a private right of action nor creates an enforceable federal right) (collecting cases). Section 1997d, which provides: "[n]o person reporting conditions which may constitute a violation under this Act shall be subjected to retaliation in any manner for so reporting", similarly does not create a private right of action. 42 U.S.C. § 1997d. *See Soto v. Lene,* 2011 U.S. Dist. LEXIS 4492, at *6 (E.D.N.Y. Jan. 14, 2011) ("courts have held that § 1997d confers no right of private action") (collecting cases); *Price v. Brittain*, 874 F.2d 252, 264 (5th Cir. 1989) (same).

Finally, neither section 2000d-2 or 2000d-7 of Title VI affords a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 289-90 (2001) (considering private rights of action under Title VI). Moreover, because Schlosser has failed to state a cognizable claim under the ADA or RA claim, sections 2000d-2 and 2000d-7 are inapplicable to Schlosser's claims, as are Schlosser's claims alleging violations of 45 C.F.R. § 85 *et seq.* and 28 C.F.R. § 35 *et seq.*, both of which relate to the ADA and RA. *See* 45 C.F.R. § 85.1 (purpose is to effectuate provisions of RA); 28 C.F.R. 35.101 *et seq.* (purpose is to implement subtitle A of title II of the ADA).

Accordingly, to the extent that Schlosser intends to bring claims under 18 U.S.C. §§ 241, 242, 245, 1001, and 1341; White Collar Crimes; 42 U.S.C. §§ 1997d and 10841; 45 C.F.R. Part 85 *et seq.*; and 28 C.F.R. Part 35 *et seq.*, those claims are dismissed.

17

6.     Section 1983 Claims

Schlosser additionally raises claims under Section 1983, principally alleging that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

The Eighth Amendment's ban on cruel and unusual punishment has been interpreted to prohibit deliberate indifference to an incarcerated individual's serious medical needs by medical providers and prison officials. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). To state an Eighth Amendment claim premised on the denial of adequate medical treatment, a plaintiff must allege both (1) the existence of a "sufficiently serious" medical need and; (2) that in delaying or denying care for that need, a charged official acted with deliberate indifference. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Factors relevant to the determination of whether a particular medical need is sufficiently serious include whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up). A medical condition that is not initially serious may meet the standard where, left untreated, the condition could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 702).

18

Determining whether an official behaved with deliberate indifference, or "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," is a somewhat murkier inquiry. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference lies somewhere on the spectrum between simple negligence and intent to harm; it is "equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280; *see also id.* at 839-40. In order to demonstrate that a charged official acted with deliberate indifference, a plaintiff must allege that the official "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result." *Salahuddin,* 467 F.3d at 280. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Nevertheless, knowledge of the risk of harm "may be proven 'from the very fact that the risk was obvious.'" *Spavone v. N.Y. State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 842).

In his Proposed Amended Complaint, Schlosser refers to a number of actions by the defendants that he contends demonstrate deliberate indifference, including: Nurse Droughn's use of the wrong tool to crush his medication; the failure of the NHCC staff to send along his medication when he was transferred to a different correctional facility; the defendants' repeated failure to afford Schlosser his medication or provide him with the proper dose of Gabapentin; Nurse Droughn's false accusations that he was hoarding medication; the change in medication from Gabapentin to acetaminophen; and the failure to refill his Gabapentin prescription.

As an initial matter, in my Initial Review Order regarding Schlosser's Amended Complaint, I dismissed claims that Nurse Droughn improperly crushed Schlosser's medication

19

and falsely accused him of keeping medication in his mouth, as well as his claim that she improperly crushed his medication using a bar code scanner. Although Schlosser realleges those claims in the Proposed Amended Complaint, he includes no facts that would alter my prior analysis.

I additionally dismissed Schlosser's claims that medical staff at NHCC should have sent his medication with him when he was transferred to a different facility. Specifically, I noted that those allegations demonstrated at most that the defendants acted negligently. Although Schlosser realleges that claim and identifies Nurse Soler as the staff member who failed to properly prepare his medications for the transfer, he includes no additional facts to demonstrate that she acted with deliberate indifference in doing so. Accordingly, that claim is dismissed.

In my previous order, I also indicated that if Schlosser could determine the identity of the nurse or nurses who denied him access to medication between May 8 and May 14, he could amend the complaint to include those defendants. *See* Initial Review Order re Amended Compl., Doc. No. 17 at 9. In the Proposed Amended Complaint, Schlosser appears to allege that Nurse McGowan-Cottle was responsible for ensuring that his prescriptions were refilled on time. However, he includes no additional facts to suggest that she was aware that his medication had run out or was otherwise involved in the denial of access to medication between May 8 and May 14. As discussed above, in the aftermath of *Tangreti*, allegations that Nurse McGowan-Cottle was responsible for ensuring prescriptions were refilled are insufficient to impose liability for the alleged constitutional violation. 983 F.3d at 616. To the extent that Schlosser possesses

additional facts with regard to Nurse McGowan-Cottle's personal involvement in the denial of medication between May 8 and May 14, he may amend the complaint to include those facts.[5]

Schlosser additionally realleges his claims that the defendants failed to ensure he was given each dose of his medication as prescribed. In particular, Schlosser maintains that he was denied doses of medication on various dates between December 2018 and December 2019; was given the wrong dose of Gabapentin; and, at one point, was given acetaminophen instead of Gabapentin, despite an underlying condition that makes it dangerous for him to take NSAIDs.

As discussed in more detail in my Initial Review Order, the denial of a single dose, or even several doses, of medication does not rise to the level of an Eighth Amendment violation. *See, e.g., Smith v. Carpenter*, 316 F.3d 178, 188–89 (2d Cir. 2003) (upholding jury verdict in favor of defendants where plaintiff failed to present evidence of permanent or ongoing harm stemming from missed doses of medication); *Youngblood v. Artus*, 2011 U.S. Dist. LEXIS 145470, at *18 (N.D.N.Y. Dec. 19, 2011) (granting motion to dismiss where "[p]laintiff failed to allege that he suffered harm as a result of [defendant's] failure to give him one dose of his seizure medication."). Similarly, a dispute over the appropriate treatment—such as the dosage given or type of medication prescribed—is not "evidence of defendants' deliberate indifference." *Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth

---

[5] I note that it is unclear from the Proposed Amended Complaint whether Schlosser contends that RN Goode and LPN Soler were responsible for denying him access to medication on those dates, or merely that they falsely noted on a grievance form that the medication had actually been dispensed. To the extent that Schlosser contends that RN Goode and LPN Soler were responsible for the denial of medication, he may include additional facts in support of that claim in an amended complaint.

Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). A medical provider may be deliberately indifferent, however, "if he or she consciously chooses an easier and less efficacious treatment plan." *Id.* (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).

Although Schlosser identifies additional dates on which he did not receive his medication in the Proposed Amended Complaint, he includes no facts to suggest that he suffered serious or ongoing harm as a result of those missed doses. Similarly, although he alleges that Nurse Droughn sought approval to change his medication from Gabapentin to acetaminophen—a medication he cannot take because of his medical conditions—he does not allege that he suffered any consequences as a result of that change. Finally, although he alleges that he was consistently given the wrong dose of Gabapentin, he nowhere indicates that the dosage was inadequate or caused him to suffer harm. Accordingly, Schlosser has failed to state a viable Eighth Amendment claim premised on the change in medication, incorrect dosage or missed doses of medication. To the extent that Schlosser possesses additional facts to demonstrate that he suffered serious or ongoing harm as a result of either the change of medication, missed doses of medication or incorrect dosage of medication, he may include those allegations in an amended complaint.

Finally, although Schlosser alleges that Nurse Droughn harassed him and falsely reported that he refused medication, verbal harassment alone does not rise to the level of an Eighth Amendment violation. *See Brown v. Cronin*, 2019 U.S. Dist. LEXIS 24302, at *7 (W.D.N.Y. Feb. 13, 2019) (verbal harassment alone, "regardless how unprofessional, inappropriate, or reprehensible it might appear, does not violate Eighth Amendment and thus is not actionable under § 1983") (collecting cases).

7.     State Law Claims

Schlosser alleges that Nurse Draughn's repeated harassment constituted intentional

infliction of emotional distress. To state a viable claim for intentional infliction of emotional

distress under Connecticut law, a plaintiff must demonstrate:

> (1) that the actor intended to inflict emotional distress; or that he knew or should have
> known that emotional distress was a likely result of his conduct; (2) that the conduct was
> extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's
> distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis*, 200 Conn. 243, 253 (1986). The conduct alleged must be "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency." *Appleton v.*

*Bd. of Educ.*, 254 Conn. 205, 211 (2000) (quoting 1 Restatement (Second), Torts § 46 (1965)).

Here, Schlosser alleges only that Nurse Droughn verbally harassed him and falsely

accused him of hoarding medication in his mouth. Those allegations are insufficient to

demonstrate that Nurse Droughn's conduct "exceed[ed] all bounds usually tolerated by decent

society [or was] of a nature which is especially calculated to cause, and does cause, mental

distress of a very serious kind." *Mellaly v. Eastman Kodak Co.*, 42 Conn. Supp. 17, 19-20

(1991). Accordingly, the claim for intentional infliction of emotional distress is dismissed.

## IV.   Conclusion

Because Schlosser has not set forth any cognizable claims that are properly joined in this

action, the motion to amend the complaint is denied. The case will proceed on the remaining

claims in the Amended Complaint. I will afford Schlosser one more opportunity to amend the

complaint to include additional facts regarding his claims for missed doses of medication,

incorrect doses of medication or the change in medication. Any proposed amended complaint

must be filed within thirty days from the date of this order. If no proposed amended complaint is filed within that time period, the case will proceed on the claims remaining from the Amended Complaint.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of September 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge