### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
JEFFREY SCHLOSSER             :     Civ. No. 3:19CV01445(SALM)
                              :
v.                            :
                              :
S. JONES, JEANETTE MALDONADO, :     February 9, 2022
CHEATMAN, JACKSON, WALKER,    :
and TIRIOLO                   :
                              :
------------------------------x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #112]

Plaintiff Jeffrey Schlosser, a sentenced inmate at Cheshire Correctional Institution ("Cheshire") in the custody of the Connecticut Department of Correction ("DOC"),[1] brings this action as a self-represented party pursuant to 42 U.S.C. §1983, alleging that defendants were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Schlosser was sentenced to a term of imprisonment on January 15, 2020. See Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=269683 (last visited Feb. 5, 2022).

to the United States Constitution.[2] Defendants are all current or former employees of the DOC, who worked at the relevant time, or thereafter, at New Haven Correctional Center ("NHCC"). See Doc. #112-2.

Pursuant to Federal Rule of Civil Procedure 56(a), all defendants move for summary judgment on all of plaintiff's remaining claims. See Doc. #112. Plaintiff has not responded to defendants' motion. For the reasons set forth below, defendants' motion for summary judgment [**Doc. #112**] is **GRANTED.**

I.    **BACKGROUND**

Plaintiff filed his original Complaint on September 13, 2019, naming nine defendants. See Doc. #1 at 1, 3-4. On initial review, the Court dismissed all claims, permitting plaintiff leave to file an Amended Complaint as to some claims. See Doc. #13 at 7. Plaintiff filed an Amended Complaint on January 23, 2020. See Doc. #15. On initial review of the Amended Complaint, the Court allowed the following claims to proceed: an Eighth Amendment claim for deliberate indifference to serious medical needs, based on the alleged "denial of medication during the period May 8 through May 14, 2019 against defendants Jackson and Cheatman, and the claim for supervisory liability against

---

[2] The Complaint and Amended Complaint originally included additional claims, but all other claims were dismissed on initial review. See Doc. #13, Doc. #17.

defendants Jones, Maldonado, Walker, and Tiriolo." Doc. #17 at 12-13.[3]

The factual allegations of the Amended Complaint are summarized in the Amended Complaint Initial Review Order, see Doc. #17 at 2-6, and only those allegations that relate to the remaining claim are summarized herein.

As to the remaining claim that he did not receive his medication now before the Court, plaintiff alleges as follows:

> On May 8th, 2019, This plaintiff did not recieve Gaberpentin for 6 days straight placing me in severe withdrawls only one night during this time I received one dose of Gaberpentin by nurse tang she said she found a missing package. This plaintiff filed a Grievence and received a response that meds were Given when they were not.

Doc. #15 at 13 (sic); see also Doc. #17 at 5 (Initial Review Order). The Court permitted plaintiff's claims for supervisory

---

[3] The Initial Review Order states that the defendants are sued "in their individual capacities[.]" Doc. #17 at 1. The Amended Complaint, however, includes the words "Individual, official" next to each listed defendant. See Doc. #15 at 1-2. The reason for this discrepancy is unclear. However, the Amended Complaint does not include any demand for relief. See Doc. #15 at 19. There is no request for injunctive relief discernable anywhere in the Amended Complaint. Furthermore, plaintiff is no longer incarcerated at NHCC, so any claims for injunctive relief would now be moot. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996). The defendants may not be sued for monetary damages in their official capacities. See Haywood v. Alcantara, 103 F. App'x 443, 444 (2d Cir. 2004). Accordingly, any claims against defendants in their official capacities would be subject to dismissal pursuant to 28 U.S.C. §1915A. The Court thus proceeds to consider the claims against all defendants in their individual capacities only.

liability to proceed based on his allegation "that he wrote to
Deputy Warden Maldonado twice about the missing medication
doses, sent an informal resolution request to ASN Jones, and
recently spoke to Deputy Wardens Maldonado and Walker and
Counselor Supervisor Tiriolo about his medication issues." Doc.
#17 at 12. See also Doc. #15 at 11 (alleging plaintiff wrote to
Maldonado about having missed medication on November 26, 2018,
and December 1, 2018); id. at 12 (describing "informal
resolution" submitted January 29, 2019, and forwarded to Jones
by Maldonado); id. at 17 (alleging that in early January 2020,
plaintiff spoke to Maldonado, Walker, and Tiriolo about his
medication "and how Shannon Droughn was using unsanitary methods
to crush" his Gabapentin).

Defendants now move for summary judgment, contending that
(1) as to defendants Maldonado, Walker, and Tiriolo, plaintiff
failed to exhaust his administrative remedies; (2) plaintiff
cannot establish a claim for deliberate indifference in
violation of the Eighth Amendment; and (3) defendants are
entitled to qualified immunity. See Doc. #112 at 1.

## II.  <u>LEGAL STANDARD</u>

The standards governing summary judgment are well-
settled. Summary judgment is appropriate only "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits ...
show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment
as a matter of law." Fed. R. Civ. P. 56(c)[.]

<u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (alterations added).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." <u>Marvel Characters</u>, 310 F.3d at 286. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." <u>Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH</u>, 446 F.3d 313, 315 (2d Cir. 2006)

(citation and quotation marks omitted).

Where a motion for summary judgment is unopposed, "the Court accepts as true all factual allegations in the admissible materials accompanying the motion for summary judgment, see Fed. R. Civ. P. 56(e), and assesses only whether any genuine issue of material fact remains for trial on the summary judgment record as it stands." Ortiz v. Santora, 223 F. Supp. 2d 387, 393 (D. Conn. 2002). "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule[.]" D. Conn. L. Civ. R. 56(a)(1).

## III. DISCUSSION

Before turning to the substance of defendants' arguments and plaintiff's claims, the Court pauses to determine the question of plaintiff's custodial status at the time of the relevant events, in 2019. Neither Initial Review Order in this matter provides an analysis of whether plaintiff's claims should be construed as being brought pursuant to the Fourteenth Amendment, which would apply if plaintiff were a pretrial detainee at the time, or under the Eighth Amendment, which would apply if plaintiff were a sentenced inmate at the time. The Initial Review Order addressing the original complaint refers to

"an Eighth Amendment violation," without discussion. Doc. #13 at 6.

The Court has taken judicial notice of the fact that plaintiff is currently incarcerated, and that the Department of Correction website indicates that he is serving a sentence that was imposed on January 7, 2020. See footnote 1. No evidence has been submitted regarding Schlosser's status in 2019. The Court therefore presumes that Schlosser was a pre-trial detainee in 2019 when the events at issue occurred.

Defendants' motion for summary judgment understandably cites the Eighth Amendment standards that would apply to claims of deliberate indifference to medical needs by a sentenced inmate. The Court applies, herein, the more plaintiff-friendly standards of the Fourteenth Amendment.

## A.   Exhaustion of Administrative Remedies

The PLRA "requires an inmate to exhaust" all available administrative remedies before bringing a civil suit "with respect to prison conditions." Medina v. Somers, No. 3:10CV00299(JBA), 2011 WL 2844301, at *2 (D. Conn. July 14, 2011) (citations and quotation marks omitted).[4] "The Supreme

---

[4] The Court notes that where the term "inmate" is used in the exhaustion context, it applies equally to pretrial detainees. See, e.g., Dickinson v. York, 828 F. App'x 780, 782 (2d Cir. 2020) (finding that pretrial detainee was required to exhaust administrative remedies under PLRA); Ruggiero v. Cty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006) (same).

Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process." Id.

> A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. See Woodford v. Ngo, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. See Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance about an issue has passed, claims concerning that issue are unexhausted and barred from federal court. See Woodford, 548 U.S. at 94-95. In addition, the inmate must exhaust his administrative remedies for each claim he asserts in federal court. See Baldwin v. Arnone, No. 3:12CV00243(JCH), 2013 WL 628660, at *5 (D. Conn. Feb. 18, 2013).

Jones v. Johnson, No. 3:15CV01135(DJS), 2017 WL 1843692, at *3 (D. Conn. May 8, 2017).

Defendants Maldonado, Walker, and Tiriolo move for summary judgment on the ground that plaintiff did not exhaust his administrative remedies. On initial review, the Court allowed claims against these defendants to go forward on "the claim for supervisory liability" for the denial of medication to plaintiff in May 2019. Doc. #17 at 13.

DOC has promulgated certain Administrative Directives ("AD") governing the process by which an inmate may "seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority."

Doc. #112-9 at 6. "DOC Administrative Directive 9.6, Inmate
Administrative Remedies, governs the facility grievance
process."[5] Doc. #112-9 at 2. AD 9.6 requires an aggrieved inmate
to first seek informal resolution of his issues, and if that
fails, to file a Level 1 grievance in writing "within 30
calendar days of the occurrence or discovery of the cause of the
grievance." Id. at 11.

> 9. From 2018 up to [December 2021], Mr. Schlosser
> submitted five grievances that were returned without
> disposition (RWD-122-001, RWD-122-002, RWD-122-021,
> RWD-122-022, RWD-122-026) and five grievances that were
> rejected (122-22-009, 122-22-010, 122-20-016, 122-20-
> 018, 122-20-022).
>
> 10. All of these grievances were returned without
> disposition or rejected because Mr. Schlosser failed to
> comply with the grievance procedure outlined in AD 9.6.
>
> 11. None of these grievances submitted pertained to Mr.
> Schlosser's medication.
>
> 12. He submitted one grievance that was deemed properly
> filed, which pertained to redactions for legal
> documents. See Attachment C.

Id. at 2-3.

It is undisputed that from 2018 through 2021, plaintiff
submitted a total of eleven grievances. See id. Defendants have
submitted a sworn statement, which is uncontested, that: "None
of these grievances submitted pertained to Mr. Schlosser's
medication." Id. at 3. It is not entirely clear what definition

---

[5]  DOC Administrative Directive 9.6 is hereinafter referred to as
"A.D. 9.6."

of "grievance" is used to make this assertion. Plaintiff did submit a number of letters, inmate requests, and complaints to various DOC officials that related to medication. He submitted a grievance form dated October 31, 2019, complaining that he had not received "all of his medication" on October 30, 2019, and October 31, 2019. Doc. #114-2 at 3. Likewise, on January 29, 2019, plaintiff submitted two Inmate Request Forms. One stated that he had not received his "blood pressure meds" as scheduled. Doc. #114-1 at 2. The other stated that he was not getting his "night time medication" and appears to relate to the same issue. Doc. #114 at 7.

The Court does not find these to be material to the issue of exhaustion, because they bear no relation to the May 2019 events that are at issue in this case, and do not involve Gabapentin. Furthermore, they make no mention of a grievance against Maldonado, Walker, or Tiriolo. Finally, to the extent any of these forms could be found to constitute a "grievance," none of them were appealed by Level 2 grievances. See Doc. #112-9 at 12 (describing Level 2 Review process); Doc. #112-9 at 3 (affidavit indicating that plaintiff "did not submit any other grievances at New Haven CC during this time period[]").

Plaintiff alleges in the Amended Complaint that he filed a grievance in connection with the May 2019 failure to provide medication. See Doc. #15 at 13. However, the Complaint is not

verified or submitted under penalty of perjury; indeed, it is not even signed. See generally Doc. #15. Mere allegations are insufficient to rebut evidence offered at the summary judgment stage. See Fitzgerald v. Henderson, 251 F.3d 345, 360-61 (2d Cir. 2001) ("[A] party opposing a properly supported motion for summary judgment is not entitled to rely solely on the allegations of her pleading, but must show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion.").

The evidence submitted reveals that plaintiff prepared a written request to refill his Gabapentin prescription; the request is hand-dated May 9, 2019, and stamped received May 13, 2019. See Doc. #114 at 19. The request bears a hand-written note dated May 13, 2019, by a nurse, stating that the prescription had been renewed. See id.

For all of these reasons, the undisputed evidence of record establishes that plaintiff failed to exhaust his administrative remedies as to his claims against **Maldonado, Walker**, and **Tiriolo**. Accordingly, summary judgment is **GRANTED** as to these three defendants.

## B. Fourteenth Amendment Violation – Jackson and Cheatman

On initial review, the Court permitted plaintiff's deliberate indifference claim regarding the May 2019 failure to provide Gabapentin to proceed for further development because

the deprivation of medication lasted six days, and plaintiff allegedly suffered "serious withdrawal symptoms." Doc. #17 at 9. On initial review of the original Complaint, the Court "instructed Schlosser to identify the defendants responsible for the missed medication. Schlosser identifies no defendant in connection with that claim. He does include two medical supervisors from New Haven Correctional Center, Cheatman and Jackson, as defendants. I permit that claim to proceed against the medical supervisors." Id.

> [A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.

Charles v. Orange Cty., 925 F.3d 73, 87 (2d Cir. 2019).

> Deliberate indifference, in this context, may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. See, e.g., Farmer [v. Brennan, 511 U.S. 825, 836 (1994)] ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."). Thus, in order to establish deliberate indifference, a plaintiff must show "something more than mere negligence"; but proof of intent is not required, for the deliberate-indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id.

Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

Even if medical treatment of a pretrial detainee is inadequate, "mere medical malpractice is not tantamount to deliberate indifference absent a showing of conscious disregard of a substantial risk of serious harm." Darby v. Greenman, 14 F.4th 124, 129 (2d Cir. 2021) (citation and quotation marks omitted).

### 1.  Jackson

The following are the only allegations against Jackson in the Amended Complaint:

- "On Jan 29th an informal resolution was written to medical concerning the matter of not being given my medication. This informal was written to medical supervisor dated Jan 29 2019 because again ... I was not given my medication. Ms. Jackson saw me on 2/5/19 about dry skin however she wrote my case will be received by the in house prescriber." Doc. #15 at 12 (sic).

- "This plaintiff filed a Grievance dated Jan 30th 2019 and explained about the medication and rebound hypertension and possible stroke with excessively high blood pressure. I also explained that I was not getting the 900mg of Gaberpentin I'm suppose to be getting that I was prescribed outside of jail. Dated received March 5 2019 and disposition 3/18/19 copy of grievance forwarded to ASN Jones and Ms. Jackson. No response." Id. at 13 (sic).

- "This plaintiff did not recieve all of my medication on Oct 30 2019 specifically Gaberpentin. I filed a grievance on Cheatman and Jackson this Grievance was suppose to go to Kozak however Cheatman investigated her own grievance." Doc. #15 at 16 (sic).

Jackson has submitted a sworn affidavit in support of summary judgment. See Doc. #112-4. Jackson confirms that she "received an inmate request form from Mr. Schlosser dated January 29, 2019. He complained about not receiving his blood pressure medication." Id. at 2. Jackson saw plaintiff on February 5, 2019, "for sick call." Id. "During the exam, he complained about dry skin on his face." Id. "He did not raise any issues about his blood pressure medication or Nurse Droughn during this exam and therefore I assumed there were no longer any issues." Id. at 3. Jackson affirms: "I do not recall [plaintiff] complaining to me about his medication besides this inmate request form and was not aware that his prescription expired in May 2019." Id.

Thus, the sum total of plaintiff's allegations against Jackson, construing the Amended Complaint very generously, is that she saw him at sick call and did not address his blood pressure medication, that she did not respond to a January 2019 grievance that was "forwarded" to her, and that he filed a grievance against her that was improperly investigated by

Cheatman.

The evidence of record reflects that Jackson did see plaintiff on February 5, 2019, and he did not raise concerns about his medication during that visit. See Doc. #112-4 at 2-3; Doc. #114-1 at 4-6 (report of encounter indicating plaintiff's only reported complaint at Feb. 5, 2019, sick call was dry skin). There is no evidence that Jackson ever received another complaint from Schlosser, and she has provided sworn testimony that she was unaware that his Gabapentin prescription was going to expire in May 2019. Plaintiff "has not produced any evidence that would satisfy each of the required elements of the claim[]" against Jackson. Marczeski v. Gavitt, 354 F. Supp. 2d 190, 196 (D. Conn. 2005). Plaintiff has provided no evidence that a lapse in receiving Gabapentin for six days posed a substantial risk to his health, nor that Jackson acted with reckless disregard of such a risk. See Weyant, 101 F.3d at 856. Accordingly, Jackson is entitled to summary judgment.

2.  Cheatman

The following are the only allegations against Cheatman in the Amended Complaint:

- "On 10/17/19 I was again deprived of Gabapentin on AM medication by Shannon Draughn. This plaintiff saw a whole rack of Gaberpentin however she never gave it to me and then put in the computer that she did. Medical Supervisor

Cheatman responded to the grievance and said all medication was administered however it wasn't my celly at the time was my witness." Doc. #15 at 16 (sic).

- "This plaintiff did not recieve all of my medication on Oct 30 2019 specifically Gaberpentin. I filed a grievance on Cheatman and Jackson this Grievance was suppose to go to Kozak however Cheatman investigated her own grievance." Id. (sic).

Cheatman has submitted a sworn affidavit in support of summary judgment. See Doc. #112-5. She avers that her "only interactions with Mr. Schlosser were responding to his grievances and handwritten complaints." Id. at 2. Cheatman indicates that she "responded to a grievance dated 10/31/2019 regarding two occasions on 10/30/2019 and 10/31/2019 when Mr. Schlosser did not receive his medication." Id. Cheatman investigated plaintiff's claim, reviewing the "Medication Administration Record (MAR)[,]" which confirmed that plaintiff had not received "his Gabapentin on the evening of 10/30/2019 and the morning of 10/31/2019." Id. Through her investigation, she "learned that his Gabapentin medication was not in the facility on those two occasions." Id. at 3.

The evidence of record reflects that Cheatman investigated a claim by plaintiff in October 2019 that he had not received his medication. Even if her actions in that review had not been

reasonable -- and they were -- there is no way that Cheatman's review of Schlosser's complaints in <u>October</u> could have contributed to the "one incident described in the Amended Complaint [that] rises to the level of a potential constitutional violation," that is, the May 2019 deprivation of Gabapentin. Doc. #17 at 12. Even if the Court were to view the October 2019 incident as independently actionable, there is no evidence that Cheatman committed even mere negligence. Again, plaintiff "has not produced any evidence that would satisfy each of the required elements of the claim[]" against Jackson. <u>Marczeski</u>, 354 F. Supp. 2d at 196. Plaintiff has provided no evidence that a lapse in receiving Gabapentin for six days posed a substantial risk to his health, nor that Cheatman acted with reckless disregard of such a risk. <u>See</u> <u>Weyant</u>, 101 F.3d at 856. Accordingly, Cheatman is entitled to summary judgment.

Summary judgment is **GRANTED** as to defendants **Jackson** and **Cheatman.**

### C.   Supervisory Liability -- Jones

The claim against Jones was permitted to proceed beyond initial review on a theory of supervisory liability.

> To state a claim for supervisory liability, a plaintiff must establish that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the

continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.

Shaw v. Prindle, 661 F. App'x 16, 18 (2d Cir. 2016) (citation and quotation marks omitted).

Plaintiff makes a single allegation against Jones:

I also wrote the Deputy Warden on January 29th and she forwarded the informal to ASN Jones and she responded with the missing blood pressure medication and the fact that I was a no show for medication on that day. There are only 2 places I could be at that time, in my cell or in the day room so how come I didn't get my medication.

Doc. #15 at 12 (sic). The January 29, 2019, inmate request form addressed by Jones has been submitted in evidence by defendants. See Doc. #114 at 7. The form reflects that Jones investigated plaintiff's claims that he had not received his medication, and determined that he had not received his Clonidine on January 15, 2019, with no reason provided in the record, and that plaintiff had not received the Clonidine on January 29, 2019, because he "was a no show during med pass[.]" Id. Jones also provided a sworn affidavit. See Doc. #112-3. In her affidavit, Jones indicates that she recalls "Schlosser complaining about his medication and two nurses." Id. at 2. Jones states that she received the January 29, 2019, inmate request form, and investigated the claims therein by reviewing plaintiff's Medication Administration Record. See id. at 2-3. As her

comments on the form indicate, Jones determined that he had missed a dose on January 15, 2019, and a dose on January 29, 2019. See Doc. #112-3 at 3. Jones explained:

> Our policy was that we referred inmates to the prescriber if inmates missed medication on three consecutive days. I saw that Mr. Schlosser missed medication on two occasions over the course of several weeks, so there was no need to refer him to the prescriber. Additionally, this did not appear to be a pattern, so I did not believe this warranted any further action.

Id.

Plaintiff's allegation, in light of the undisputed evidence, is insufficient to sustain a claim of supervisory liability against Jones. She did not "participate[] directly in the alleged constitutional violation[.]" Shaw, 661 F. App'x at 18 (citation and quotation marks omitted). When Schlosser made Jones aware of his concerns about his medication, she took action, and reasonably determined that there was no pattern of missed doses, and that no further action was required. The information Jones received -- that plaintiff had missed two doses of medication over the course of two weeks -- did not put Jones on notice of any unconstitutional conduct, or any serious risk to plaintiff's health or safety. Her response was not grossly negligent or, indeed, negligent at all. There is no evidence suggesting that her response somehow caused plaintiff to be deprived of a different medication, for different reasons, several months later.

In sum, Jones' action in reviewing and responding to the January 29, 2019, request, does not subject her to supervisory liability. See, e.g., Ziemba v. Armstrong, 430 F.3d 623, 625 (2d Cir. 2005) (affirming grant of summary judgment on supervisory liability to defendant who "would have had no reason to question" the reasonableness of the actions of subordinates, based on the information actually received); Young v. Choinski, 15 F. Supp. 3d 172, 193 (D. Conn. 2014) (granting summary judgment on supervisory liability for defendant who reviewed prisoner complaints "about misconduct that had already occurred and concluded, as opposed to 'ongoing' violations[]").

Summary judgment is **GRANTED** as to defendant **Jones.**

## IV.  CONCLUSION

For the reasons set forth herein, the Court finds that plaintiff has failed to produce evidence sufficient to support his claims, and that defendants' unrebutted evidence establishes that all defendants are entitled to summary judgment on all claims.

Judgment shall enter in favor of defendants Jackson, Cheatman, Jones, Maldonado, Walker, and Tiriolo.

The Clerk shall close this case.

It is so ordered this 9th day of February, 2022, at New Haven, Connecticut.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE